UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JOHN D. EVANS,

               Plaintiff,                             Case No. 2:12-cv-424

v.                                             Honorable Gordon J. Quist

P. WATSON, et al.,

               Defendants.

_____/

**<u>OPINION</u>**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's due process and Title VII claims. The Court will serve the complaint against the named Defendants with regard to Plaintiff's equal protection and retaliation claims.

**Factual Allegations**

Plaintiff John D. Evans, a state prisoner currently incarcerated at the Chippewa Correctional Facility (URF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Food Service Supervisor P. Watson and Food Service Director Raymond Schuh.  In addition, Plaintiff has since amended his complaint adding claims against Segregation Officer Brown, Corrections Officer Robins, Segregation Officer Bennett, and Corrections Officer Anderson. During the pertinent time period, Plaintiff had a job in the URF kitchen.  Plaintiff claims that all of his job evaluations show that he scored the highest possible points and that he was one of three lead dining room workers.

On October 6, 2011, Defendant Watson confronted Plaintiff and stated, "What the fuck are you doing back here?"  Plaintiff responded that he had to use the restroom and Defendant Watson ordered him to get back to where he belonged.  Later, Defendant Watson asked Plaintiff if he was allergic to work.  Plaintiff states that his job title was Kitchen Lead Worker and he was supposed to help wherever needed.  During the end of chow, there was a rush of prisoners coming with their trays, so Plaintiff helped one of the kitchen workers who was not a regular.  Defendant Watson approached Plaintiff for the third time and accused Plaintiff of being out of place.  Plaintiff responded by asking how he could be out of place when he was in the area that his job prescribed him to be.  Defendant Watson then told Plaintiff that he was terminated.

The next day, Plaintiff went to talk to Defendant Schuh about the situation and Defendant Schuh stated that Defendant Watson needed to work on himself.  Plaintiff responded that Defendant Watson always treated "Blacks" in that manner.  Defendant Schuh said that Defendant Watson was a good guy, that he would speak to him, and that Plaintiff should just return to his work assignment. On October 9, 2011, Plaintiff wrote a grievance regarding Defendant Watson's attitude.

- 2 -

On October 17, 2011, Plaintiff received a response to the grievance from Defendant Schuh, which stated that Defendant Watson had repeatedly seen Plaintiff leave his assignment, and had directed Plaintiff to his job assignment. The response stated that Plaintiff had become argumentative and that Defendant Watson had sent him back to his unit for the remainder of his shift.

After Plaintiff filed the grievance, Defendant Watson became hostile toward Plaintiff, telling Plaintiff to rearrange the tables and chairs after his other work was done, thereby denying him breaks. Defendant Watson told Plaintiff to either do the job or quit and would give him "hard stares." Defendant Watson would also walk up behind Plaintiff while he was getting the sanitizer for the flatware and yell Plaintiff's name in a loud voice. On one occasion, Defendant Watson told Plaintiff that he did not want the cup guys standing in front of the dish tank. Plaintiff said that's where they had always stood, but Defendant Watson insisted he did not want them standing in that location. Plaintiff then had the cup guys stand elsewhere for the next few weeks. However, at some point, Defendant Watson yelled at the cup guys and accuse them of being out of place. Consequently, the cup guys were angry with Plaintiff and blamed him for getting them into trouble with Defendant Watson.

Plaintiff sought help from Food Steward Lewis, and asked if she would change his job assignment to the morning so that Plaintiff would not be working at the same time as Defendant Watson. Plaintiff was eventually assigned to the morning shift three days a week and the afternoon shift only two days a week. Plaintiff states that when he did work with Defendant Watson, he attempted to avoid any conflict. However, a short time later, Defendant Watson changed his work schedule and began working the morning shift.

Plaintiff claims that other employees who have filed a grievance have been terminated or demoted from their job assignments without just cause. Plaintiff also claims that

- 3 -

Defendant Watson discriminates against African American inmates and attaches affidavits of other African American inmates to his complaint in support of this assertion.

Plaintiff states that on August 13, 2012, at approximately 5:00 p.m., he went to Defendant Watson and told him that he had a migraine headache and asked if he could get a substitute worker so that Plaintiff could take off the remainder of the shift. Defendant Watson told Plaintiff that if he could not do the job, he would be layed in until he got medical clearance from Health Service. Plaintiff complained that would take a week, and Defendant Watson stated that Plaintiff should just "work through it" then. Plaintiff retorted that Defendant Watson was not a medical professional and should not give medical opinions, and Defendant Watson ordered Plaintiff to return to work or be written a ticket pending termination. Plaintiff stated that he could not work and left his job assignment.

The next day, Plaintiff was called to the kitchen to speak to Defendant Schuh. Plaintiff explained what had happened and Defendant Schuh asked Plaintiff if he was still fasting. Plaintiff stated that he was and Defendant Schuh opined that might have a lot to do with the headache. Defendant Schuh told Plaintiff that he had "shot himself in the foot" by leaving. Plaintiff was terminated from his job assignment and was placed back in the "pool." Plaintiff then details the experience of other prisoners who were allegedly retaliated against by Defendant Watson.

In Plaintiff's supplemental pleading (docket #7), he states that on February 8, 2013, he received a docket sheet from this court showing the status of his lawsuit. Plaintiff states that the mail had been opened. On February 11, 2013, Plaintiff told his Resident Unit Manager what had happened and was told to write the mail room about it. Later that day, at about 4:30 p.m., Plaintiff was pulled out of his cell by Segregation Officer Brown, Corrections Officer Robins, and another Unknown Corrections Officer, searched, and told to report to Segregation Officer Bennett.

- 4 -

Segregation Officer Bennett and Corrections Officer Anderson took Plaintiff into the bathroom and strip searched him, then they told him to go to chow.  As Plaintiff entered the chow hall, he noticed Defendant Watson staring at him intensely, so Plaintiff moved into the other chow hall line.  As Plaintiff went to get a tray, he saw Defendant Watson at the end of the line looking at him.  Plaintiff immediately began suspecting that he had been set up because Defendants had read his mail.  When Plaintiff returned to his unit, he was told to report to the annex.  Plaintiff was informed that a weapon had been discovered in his area of control.  Plaintiff was again strip searched and was placed in a segregation cell.  When Plaintiff asked why his cell had been searched, he was told it was a routine shakedown.  However, Plaintiff states that if that was the case, the whole unit would have been searched.  In addition, Plaintiff states that the presence of a Segregation Officer during the search indicates that they knew that someone was going to the hole.  Plaintiff contends that someone must have planted the knife because it did not belong to him.  Plaintiff asserts that the knife was planted to discourage him from filing a civil action.

## Discussion

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial

- 5 -

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts that his job termination at the hands of Defendants Watson and Schuh violated Title VII of the Civil Rights Act of 1964. However, prior to seeking a judicial remedy for job discrimination pursuant to Title VII, a plaintiff must file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 180 days after the allegedly unlawful employment practice. *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). A prisoner "may not circumvent Title VII's filing requirement by utilizing § 1983 as the vehicle for asserting his Title

- 6 -

VII claim." *Id.* Because Plaintiff has not complied with this requirement, he may not bring a claim pursuant to Title VII.

Moreover, in a similar situation in the federal prison setting, the Tenth Circuit held that a prisoner is not an employee under Title VII because his relationship with the defendants arose out of his status as an inmate, not an employee.

> Although his relationship with defendants may contain some elements commonly present in an employment relationship, it arises "from [plaintiff's] having been convicted and sentenced to imprisonment in the [defendants'] correctional institution. The primary purpose of their association [is] incarceration, not employment." Prisoner Not Protected From Racial Job Bias, 2 Empl.Prac.Guide (CCH) ¶ 6865, at 7099 (April 18, 1986) (EEOC Decision No. 86-7). Since plaintiff has no employment relationship with defendants, he cannot pursue a claim for discrimination against them under . . . Title VII.

*Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Therefore, even if Plaintiff had filed a charge with the EEOC, he is not properly an employee for purposes of a Title VII action.

Plaintiff also claims that his job termination violated his due process rights. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams*, 926

F.2d at 997 and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

The court concludes that Plaintiff's equal protection and retaliation claims against all of the named Defendants are non-frivolous and may not be dismissed on screening.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's due process and Title VII claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint with regard to Plaintiff's equal protection and retaliation claims against Defendants Paul Watson, Raymond Schuh, Segregation Officer Brown, Corrections Officer Robins, Segregation Officer Bennett, and Corrections Officer Anderson.

An Order consistent with this Opinion will be entered.

Dated: July 23, 2013                    _____/s/ Gordon J. Quist_____
                                        GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE