UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN EVANS,

                    Plaintiff,                    Case No. 2:12-cv-424

v.                                       HON. GORDON J. QUIST

PAUL WATSON, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Defendants are Paul Watson, Raymond Schuh, Sergeant Brown, Officer Robins, Sergeant Bennett and Officer Anderson. Plaintiff's remaining claims are for equal protection and retaliation. On October 6, 2011, Defendant Watson confronted Plaintiff and stated, "What the fuck are you doing back here?" Plaintiff responded that he had to use the restroom and Defendant Watson ordered him to get back to where he belonged. Later, Defendant Watson asked Plaintiff if he was allergic to work. Plaintiff states that his job title was Kitchen Lead Worker and he was supposed to help wherever needed. During the end of chow, there was a rush of prisoners coming with their trays, so Plaintiff helped one of the kitchen workers who was not a regular. Defendant Watson approached Plaintiff for the third time and accused Plaintiff of being out of place. Plaintiff responded by asking how he could be out of place when he was in the area that his job prescribed him to be. Defendant Watson then told Plaintiff that he was terminated.

The next day, Plaintiff went to talk to Defendant Schuh about the situation and Defendant Schuh stated that Defendant Watson needed to work on himself.  Plaintiff responded that Defendant Watson always treated "Blacks" in that manner.  Defendant Schuh said that Defendant Watson was a good guy, that he would speak to him, and that Plaintiff should just return to his work assignment.  On October 9, 2011, Plaintiff wrote a grievance regarding Defendant Watson's attitude.  On October 17, 2011, Plaintiff received a response to the grievance from Defendant Schuh, which stated that Defendant Watson had repeatedly seen Plaintiff leave his assignment, and had directed Plaintiff to his job assignment.  The response stated that Plaintiff had become argumentative and that Defendant Watson had sent him back to his unit for the remainder of his shift.

After Plaintiff filed the grievance, Defendant Watson became hostile toward Plaintiff, telling Plaintiff to rearrange the tables and chairs after his other work was done, thereby denying him breaks.  Defendant Watson told Plaintiff to either do the job or quit and would give him "hard stares."  Defendant Watson would also walk up behind Plaintiff while he was getting the sanitizer for the flatware and yell Plaintiff's name in a loud voice.  On one occasion, Defendant Watson told Plaintiff that he did not want the cup guys standing in front of the dish tank.  Plaintiff said that is where they had always stood, but Defendant Watson insisted he did not want them standing in that location.  Plaintiff then had the cup guys stand elsewhere for the next few weeks.  However, at some point, Defendant Watson yelled at the cup guys and accused them of being out of place.  Consequently, the cup guys were angry with Plaintiff and blamed him for getting them into trouble with Defendant Watson.

Plaintiff sought help from Food Steward Lewis, and asked if she would change his job assignment to the morning so that Plaintiff would not be working at the same time as Defendant Watson.  Plaintiff was eventually assigned to the morning shift three days a week and the afternoon

shift two days a week. Plaintiff states that when he did work with Defendant Watson, he attempted

to avoid any conflict.  However, a short time later, Defendant Watson changed his work schedule

and began working the morning shift.

Plaintiff states that on August 13, 2012, at approximately 5:00 p.m., he went to

Defendant Watson and told him that he had a migraine headache and asked if he could get a

substitute worker so that Plaintiff could take off the remainder of the shift.  Defendant Watson told

Plaintiff that if he could not do the job, he would be layed in until he got medical clearance from

Health Service.  Plaintiff complained that would take a week, and Defendant Watson stated that

Plaintiff should just "work through it."  Plaintiff retorted that Defendant Watson was not a medical

professional and should not give medical opinions, and Defendant Watson ordered Plaintiff to return

to work or be written a ticket pending termination.  Plaintiff stated that he could not work and left

his job assignment.  Plaintiff was terminated from his job assignment.  Defendants Watson, Schuh

and Bennett move for summary judgment for failure to exhaust grievance remedies against them.[1]

Plaintiff has filed a response.

Summary judgment is appropriate when the record reveals that there are no genuine

issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

---

[1] Defendants Unknown Brown, Unknown Robins and Unknown Anderson have not been
served with a summons and complaint.  There is no one by the name of Robins at the prison (docket
#31) and there are too many employees with the last names Brown and Anderson to identify which
individuals Plaintiff intends to sue (docket ## 30, 31).

as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union*

*of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must

consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable

inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th

Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense,

which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007).

A moving party without the burden of proof need show only that the opponent cannot sustain his

burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see*

*also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  A moving party with the burden of

proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002);

*Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party

has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his

showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting

W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material*

*Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit

repeatedly has emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable

jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE,

ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056

4

(same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶ P.  The Policy Directive also provides the following directions for completing grievance forms:  "The issues shall be stated briefly.  Information provided shall be limited to the facts involving the issue being

grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶¶ T, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ GG.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III.  *Id.* at ¶ FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.  Time limitations shall be adhered to by the inmate and  staff at all steps of the grievance process.  *Id.* at ¶ X.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id* at ¶ HH.

Defendants argue that the grievance Plaintiff filed on the October 6, 2011, incident is the only relevant grievance filed by Plaintiff in this action.  URF-11-10-3385-17a.  Plaintiff complained that Defendant Watson used derogatory, demeaning and humiliating language.  The grievance did not name any other Defendant.  Plaintiff alleges that this grievance was sufficient to establish exhaustion of his grievance remedies because his claims are part of an ongoing pattern of harassment by Defendant Watson.

Plaintiff, however, is using this grievance as the basis for his retaliation claim. Plaintiff asserts that because he filed this grievance he was retaliated against, treated unfairly on his job, and that his job assignment was terminated. Plaintiff never filed a grievance regarding his retaliation claim after his job assignment was terminated. In the opinion of the undersigned, URF-11-10-3385-17a did not exhaust Plaintiff's administrative grievance remedies on his equal protection or retaliation claims. Further, Plaintiff only named Defendant Watson in that grievance. Plaintiff never filed a grievance relevant to this action against any other named defendant which was resolved prior to filing this complaint.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #22) be granted. I further recommend that the court dismiss this case in its entirety, since the remaining Unknown Defendants have never been served with a summons and complaint and Plaintiff has made no effort to properly identify those Defendants.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3.  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 11, 2014